IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAHARRA DAVIS | : | |
| Plaintiff | : | Civil Action No. |
| vs. | : | |
| SOUTHEASTERN PENNSYLVANIA | : | 18    3166 |
| TRANSPORTATION AUTHORITY | : | **COMPLAINT** |
| a/k/a SEPTA | : | |
| | : | (With Jury Demand) |
| Defendants | : | |

Plaintiff Jaharra Davis, through the undersigned attorney, by way of Complaint in a civil action, pleads as follows:

### IDENTITY OF PARTIES, JURISDICTION AND VENUE

1.     Plaintiff Jaharra Davis is an adult individual residing at 2025 N. 25th Street, Philadelphia Pennsylvania 19121.

2.     Defendant Southeastern Pennsylvania Transportation Authority, also known as SEPTA ("SEPTA"), is a regional public transportation authority that operates various forms of public transit services—bus, subway and elevated rail, commuter rail, light rail and electric trolleybus—that serve 3.9 million people in five counties in and around Philadelphia, Pennsylvania, United States. SEPTA also manages construction projects that maintain, replace, and expand infrastructure and rolling stock. SEPTA is the major transit provider for Philadelphia and its suburbs in Delaware, Montgomery, Bucks and Chester counties.

3.     SEPTA is a state created authority and the majority of its board is appointed by the five Pennsylvania counties it serves. Several SEPTA commuter rail lines terminate in the nearby states of Delaware and New Jersey. SEPTA has the 6th-largest U.S. rapid transit system by ridership, and the 5th largest overall transit system, with about 306.9 million annual unlinked

trips. It controls 290 active stations, over 450 miles (720 km) of track, 2,295 revenue vehicles, and 196 routes. SEPTA also manages Shared-Ride services in Philadelphia and ADA services across the region. SEPTA is a public entity which receives federal funding and which operates a fixed route transportation system.

4.      SEPTA's headquarters are located at 1234 Market Street in Center City, Philadelphia, Pennsylvania 19107-3780.

5.      This Court has jurisdiction of this matter pursuant to United States Code, 28 U.S.C. § 1331, as this case involves federal questions for claims arising out of federal statutes providing the right of civil action, as averred herein.

6.      Venue in the United States District Court for the Eastern District of Pennsylvania is in accordance with 28 U.S.C. § 1391(b). Plaintiff's claims arose within this Judicial District. The incidents in question occurred in the City of Philadelphia in the Commonwealth of Pennsylvania.

### FACTUAL BACKGROUND

7.      Plaintiff is a disabled person with a qualified disability consisting of a permanent and serious medical condition, epilepsy - seizure condition; she is a permanently handicapped individual whose disability requires her to have and use a service dog, which warns her of oncoming seizures so that she can get to a safe place to prevent serious harm and death. (See Exhibit A attached hereto).

8.      Plaintiff's service dog is professionally trained, certified, well-groomed, leashed, controlled, silent, calm, curbed and otherwise an exemplary service dog with irrefutable credentials. Plaintiff's doctor prescribed and recommended the service dog for plaintiff to help

with her serious seizure condition. At all relevant times, plaintiff's service dog was clothed with
its service dog identification.

9.      Defendant has in the past engaged, and are presently engaging, in discriminatory
practices against individuals with disabilities necessitating this civil action to compel compliance
with the accessibility provisions of the laws cited herein and to obtain compensation for injuries
sustained thereby. Defendant has refused to voluntarily comply with the demands of state and
federal laws against discrimination and have refused to allow full and equal access to persons
with disabilities of its services to the public.

10.     The wrongful and discriminatory actions of Defendant as averred herein
proximately caused Plaintiff to suffer the loss of civil liberties and also to suffer severe and
permanent emotional distress necessitating this civil action.

11.     From August 1, 2016 to the present, plaintiff has been, by necessity, a frequent
user/customer/passenger on SEPTA busses in Philadelphia for her transportation needs, and due
to her disability, brings her service dog with her onto the Septa busses; the dog is always
perfectly behaved.

12.     On a regular and repeated and continuous basis, during this period and in the
months prior, Septa bus drivers and aides (employees of Septa) have been harassing plaintiff,
refusing to allow her on the bus or ejecting her from the bus, and/or calling the police on her,
preventing her from using the bus and bus services and taking other bad actions against her
because of her need and use of a service dog for the disabled.

13.     Plaintiff made many verbal and written complaints to Septa (both during and prior
to the above time frame), directly to the Septa employees involved, their supervisors, Septa's
complaints department, Septa's customer service department and other administrative

departments of Septa. Although the complaints were usually if not always found to be valid, and the Septa bus drivers and aides found to be in violation of the ADA, Septa failed to take punitive or corrective action against the perpetrators, failed to discipline them, failed to supervise or oversee them, failed to properly train or re-train them on ADA requirements and allowed the violations to continue unabated, forming an unwritten policy, a custom and regular practice at Septa, of discriminating against disabled persons with service animals.

14.    In some of the Septa reports on plaintiff's complaints, Septa indicated that it told the perpetrators to watch an ADA training video. This, if true, still constitutes insufficient training and fails to cure the problem. The training should be done before the Septa employees begin working with customers on the buses; the training should consist of more than watching a video; there should be follow-up after the video watching to make sure the video was watched, understood, remembered and implemented, there should be discipline in addition to training, there should be increased supervision of the offending employee, at least for a probationary period, there should be precise service animal training and testing given to all Septa employees whose job description requires them to come in contact with customers.

15.    Septa does not provide service animal training to Septa employees generally, such as when the employees are hired or placed in a position where they would have to make a decision about a disabled passenger. Septa employees are insufficiently trained on the ADA and on how to handle service animals.

16.    One of the main problems plaintiff faces is Septa employees repeatedly asking for her "government papers" despite the fact that there is no such thing as government-issued papers for disabled persons or service animal users, nor is there any requirement under the law for a disabled person to present "papers" in order to receive reasonable accommodations.

17.    Time after time, plaintiff encounters Septa employees who are ignorant about the law of ADA and service animals, and who, accordingly, brazenly violate plaintiff's civil rights. Many Septa employees do not know that people with seizure disorders use service animals; many Septa employees do not know that a disabled person can bring a service animal on the bus without presenting documentary proofs; many Septa employees do not know that the government does not issue identification cards to disabled citizens to allow them to receive reasonable accommodations.

18.    Septa, through its lack of training, supervision and discipline, has allowed the Septa bus and rail lines to become hotbeds of bigotry against the disabled. Disabled persons like plaintiff are understandably hesitant, anxious and frightened when they need to use public transportation in the City of Philadelphia; this state of affairs must end.

19.    Septa currently manufactures, distributes  and issues special Septa cards to Septa customers. These cards are used by Septa customers to enter Septa busses and pay for bus fares more quickly and easily; Septa refers to these as Key Cards. Septa also currently issues cards used by certain customers who qualify for reduced rates; Septa refers to these as Reduced Transit Fare Cards.

20.    It would be quick, easy and inexpensive for Septa to issue Key Cards or Reduced Transit Fare Cards or new cards to Septa customers with wording or markings on them to indicate the customer is entitled to board with a service animal. In that case, the customer could simply show the card to the bus driver and avoid the harassment described above. Septa should be compelled to issue service animal user cards and/or disabled passenger cards and/or current cards with service animal user markings on them to Septa customers, or to employ an equally user-friendly system to avoid Septa employees' history and practice of harassing and

discriminating against disabled/service animal using customers. Such a system should avoid the documented problems with the current situation at Septa, illustrated by the endless spiral of harassment—training video—more harassment—another training video, etc., where the root of the problem never gets addressed and the discriminatory activity continues.

21.     Disabled Septa passengers should not have to go through the harrowing, time-consuming process of "proving" their need for service animals to poorly-trained Septa workers every time they board. This not only violates the disabled passenger's rights, it caused delay and inconvenience for everyone else on the bus or train, who must wait while the Septa employee and disabled customer argue and debate over the service animal.

COUNT ONE (Violation of ADA)

22.     Plaintiff incorporates the above averments into this count as if repeated at length herein.

23.     Plaintiff has the present intention of returning to Septa and continuing to use Septa bus and train transportation, by necessity, since plaintiff lives in Philadelphia and needs to use public transportation.

24.     The aforementioned incidents proximately caused plaintiff to suffer severe emotional distress, inconvenience, frustration, embarrassment and hardship.

25.     The ADA requires that, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

26.     Defendant, as a public entity providing services to the public, is subject to the laws and regulations of Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12131-12134.

27.     The aforementioned failure of Defendant to provide reasonable accommodations to plaintiff is a violation of Title II of the federal Americans With Disabilities Act (ADA).

28.     Congress enacted the ADA in 1990 "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). It found that "historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

29.     Plaintiff is a person with disabilities covered by the ADA, 42 U.S.C. §§ 12102.

30.     Defendant failed to provide plaintiff with reasonable accommodations to address her seizure condition by harassing her and refusing her entry onto busses with her service dog.

31.     Defendant's aforementioned acts and omissions, in violation of Title II of the Americans With Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., proximately resulted in actual damages to plaintiff, as averred specifically above, and continue to cause damages to plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendant for declaratory and injunctive relief as follows: (a) Declaring that defendant violated title II of the ADA, 42 U.S.C. § 12101 et seq., and that defendant is unlawfully refusing to make reasonable accommodations for plaintiff and other disabled persons using service animals; (b) Enjoining defendant from continuing to provide services to the general public while failing to provide the above-mentioned

reasonable accommodations to disabled persons with service animals, and compelling defendant to immediately institute the aforementioned reasonable accommodations; (c) Awarding compensatory damages, attorney's fees, costs of litigation, prejudgment interest and other monetary damages in favor of plaintiff and against defendant; and (d) Ordering such other appropriate relief as the interests of justice may require.

## COUNT TWO (Violation of Rehabilitation Act)

32. Plaintiff incorporates the above averments into this count as if repeated at length herein.

33. Plaintiff is a person with disabilities covered by Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 ("RA").

34. At all relevant times, Defendant has been a recipient of Federal financial assistance, and is therefore subject to the Rehabilitation Act, 29 U.S.C. § 794, and its implementing regulations, 45 C.F.R. Part 84.

35. Discrimination on the basis of disability is prohibited by Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a): "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

36. Defendant, which is a recipient of federal financial assistance, discriminates against "qualified individual[s] with a disability" within the meaning of the RA by administering programs and services for the general public in a manner that denies individuals with disabilities the opportunity to receive the same or similar services in the most integrated setting appropriate to their needs. 29 U.S.C. § 794; 45 C.F.R. § 84.4.

37. By continuing to serve the general public while preventing access to those same services to persons with disabilities in need of service animals, and by failing to make reasonable accommodations for service animal users, defendant is violating the RA and is liable to plaintiff under the RA.

38. Defendant's aforementioned acts and omissions, in violation of the RA, proximately resulted in actual damages to Plaintiff, as averred specifically above, and continue to cause damages to plaintiff by preventing her from using and enjoying the transportation services provided by Septa to the general public.

WHEREFORE, Plaintiff demands judgment against Defendant for declaratory and injunctive relief as follows: (a) Declaring that defendant violated Section 504 of the Rehabilitation Act, 29 U.S.C. § 701 et seq., and that defendant is unlawfully failing to make reasonable accommodations for plaintiff and other disabled persons who use service animals; (b) Enjoining defendant from continuing to provide services to the general public while failing to provide the above-mentioned reasonable accommodations to disabled persons, and compelling defendant to immediately provide reasonable accommodations as averred above; (c) Awarding compensatory damages, attorney's fees, costs of litigation, prejudgment interest and other monetary damages in favor of plaintiff and against defendant; and (d) Ordering such other appropriate relief as the interests of justice may require.

### COUNT THREE (Intentional Discrimination)

39. Plaintiff incorporates the above averments into this count as if repeated at length herein.

40. The sheer number of occasions in which plaintiff has been harassed for having a service animal shows an egregious disregard by Septa for the rights of its disabled customers.

41.     The aforementioned acts of defendant in harassing plaintiff and ejecting her from Septa busses and trains demonstrates an intent to discriminate. No reasonable person could be unaware of its unlawfulness.

42.     This refusal to provide reasonable accommodations and allow plaintiff to have a service dog without harassment has been going on for years, with no attempt to correct the glaring problem.

43.     It can therefore be inferred that defendants are acting with discriminatory intent in allowing this unlawful condition to persist.

44.     It is averred upon information and belief that defendant acted with intent to discriminate against disabled customers suing service animals to prevent them from using Septa transportation services

45.     Defendant at all relevant times acted in reckless disregard for (and with deliberate indifference to) the rights of plaintiff and other disabled members of the general public.

46.     Defendant intentionally deprived plaintiff services provided to the general public and continues to discriminate against plaintiff due to her disability and need for a service animal. Defendant's violations of plaintiff's rights under the ADA and RA were so clear and obvious that discriminatory intent can be discerned therefrom.

47.     In addition, the acts of Septa employees/bus drivers in harassing plaintiff and ejecting her from the Septa bus for use of a service animal, were intentional acts committed with deliberate indifference to plaintiff's rights under the ADA and RA, and constituted intentional violations of the ADA and RA. Defendant Septa is vicariously liable for the intentional ADA and RA violations of its employees as averred herein.

48.     Defendant's intentional violation of the aforementioned laws against discrimination give rise to plaintiff's right to recover compensatory damages and punitive damages in this civil lawsuit.

49.     Said violations of law by Defendant proximately and legally caused plaintiff to suffer damages and injuries, including the impairment and prevention of Plaintiff's use and enjoyment of Defendant's transportation services and access to Septa busses, inconvenience, costs of alternate transportation, loss of enjoyment of life, emotional distress and loss of civil rights, and other damages.

WHEREFORE, Plaintiff demands judgment in favor of Plaintiff and against Defendant for compensatory damages, punitive damages, attorney's fees and litigation costs with interest and all other relief to which Plaintiff is entitled under the law, or which this Court deems appropriate.

### COUNT FOUR (Violation of § 1983)

50.     Plaintiff incorporates the above averments into this count as if repeated at length herein.

51.     Defendant is a public entity and all acts and omissions averred herein were done under color of state law.

52.     Defendant's failure to allow disabled persons with service animals onto their busses and trains is a widespread, systemic problem that has been happening repeatedly hundreds of times over the years to many, many disabled customers and constitutes a regular practice and pervasive custom giving rise to a § 1983 claim pursuant to the US Supreme Court case of *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 701 (1978).

53.     There is evidence and information demonstrating that the above described harassment of individuals using service animals were part of an ongoing practice and pervasive

custom a Septa: there were a multitude of complaints written up and otherwise lodged by disabled customers over the years and continuing, including complaints of the same types of discrimination plaintiff has averred herein; despite the many complaints, the practice continues and the complaints continue. This unwritten policy gives rise to a § 1983 claim.

54.     Defendant's aforementioned unlawful policies and customs proximately caused its employees/bus drivers to discriminate against plaintiff for her service dog.

55.     These policies violate the Equal Protection Clause and Due Process Clause of the 14th Amendments to the US Constitution by treating service animal using customers differently from those similarly situated and denying services to disabled customers while provided them to the general population.

56.     Due to defendants' aforementioned wrongful acts and omissions, defendants are liable to Plaintiff under 42 USC § 1983 for violation of plaintiff's rights under the US Constitution.

57.     The aforementioned violations of Plaintiff's rights directly and proximately resulted in actual damages to Plaintiff, as averred specifically above.

WHEREFORE, Plaintiff demands judgment in favor of Plaintiff and against Defendant for compensatory damages, attorney's fees and litigation costs with interest and all other relief to which Plaintiff is entitled under the law, or which this Court deems appropriate.

## JURY DEMAND

Plaintiff demands a jury of 12 persons for all issues so triable.

        GOLDFEIN & JOSEPH, PC
        Attorney for Plaintiff

By:   /s/ Stephen Cristal
        Stephen H. Cristal, Esquire (Federal Atty. ID #SC4765)
        1880 JFK Boulevard, 20th Floor, Philadelphia, PA 19103
        P: 215-979-8288, Fax: 215-914-6353, Email: scristal@goldfeinlaw.com

Dated: July 20, 2018

# Penn Medicine

---

Hospital *of the* University of Pennsylvania

**Department of Neurology**
**Penn Epilepsy Center**
**Michael Gelfand, M.D., Ph.D.**
Assistant Professor of Clinical Neurology

Jul 14, 2017

RE:     Jaharrah Davis
**DOB:** 12/20/1995
RE:     Seizure safety pet

To whom it may concern,

Jaharrah Davis is currently a patient of Dr. Michael Gelfand at the Penn Epilepsy Center of the Hospital of the University of Pennsylvania for the treatment of a seizure disorder.

Ms. Davis has been diagnosed with possible seizures within the setting of mesial temporal sclerosis.

Ms. Davis is being treated with antiepileptic medications and is also utilizing a seizure safety pet to assist her when she has seizures.

Ms. Davis has certificates for this animal and will provide them upon request.

Please allow this seizure safety pet to share living quarters with Ms. Davis.

Please contact the office with any questions at 215-662-3606.

Thank you for your understanding in this matter.

Sincerely,

Michael Gelfand, MD
3400 Spruce Street
Philadelphia, PA   19104



# The United States Service Dog Registry

Leave nothing but an excellent impression.

This certificate confirms that the following Service Dog Team has voluntarily signed our training and behavior standards agreement.

| | |
|---|---|
| Handler | **Jaharrah Davis** |
| Animal | **Megan Davis** |
| Registration # | **1440251177** |

Under the Americans with Disabilities Act (ADA), businesses and organizations that serve the public must allow people with disabilities to bring their service animals into all areas of the facility where customers are normally allowed to go. This federal law applies to all businesses open to the public, including restaurants, hotels, taxis and shuttles, grocery and department stores, hospitals and medical offices, theaters, health clubs, parks and zoos.

NOT VALID WITHOUT

HOLOGRAPHIC AUTHENTICATION

For questions concerning Service Animals, please call the United States Department of Justice ADA Info Line at (800) 514-0301 (voice) or visit www.ada.gov

The United States Service Dog Registry is not affiliated with any government agency. The ADA defines a service animal any dog that is individually trained to do work or perform tasks for the benefit of an individual with a disability, including a physical, sensory, psychiatric, intellectual, or other mental disability. If a dog meets this definition, it is considered a service animal under the ADA regardless of whether they have been licensed or certified by a state or local government. Service animals perform some of the functions and tasks that the individual with a disability cannot perform for him or herself. The United States Service Dog Registry is not a certification process. Registrant data is based on assertions by dog owner. Registration is not required by the ADA. Use of this certificate is subject to the terms and conditions set forth in the user agreement, available online at the USSDR website, which has been accepted by the bearer.

2016   USSDR GENUINE





A312

*Jaharrah* ___

Authorized Signature - Not Valid Unless Signed

**Service Animal Information**
Under the Americans with Disabilities Act (ADA), businesses and organizations that serve the public must allow people with disabilities to bring their service animals into all areas of the facility where customers are normally allowed to go. Service animal means any dog that is individually trained to do work or perform tasks for the benefit of an individual with a disability, including a physical, sensory, psychiatric, intellectual, or other mental disability. If they meet this definition, animals are considered service animals under the ADA regardless of whether they have been licensed or certified by a state or local government.

The USSDR is a free, voluntary, non-governmental, privacy-conscious and secure registry deployed to promote community-defined training and behavior standards. We are not affiliated with any government agency and nor are we a certification process. Use of this card is subject to the terms and conditions set forth in the user agreement which has been accepted by the bearer. Learn more about our training and behavior standards, mission and purpose at USSDR.org. For questions concerning Service or Assistance Animals, please call the United States Department of Justice ADA Info line at 800-514-0301 (voice) or visit ada.gov

---

**Service Dog**                                JM72630

Name:    MEGAN DAVIS
Handler: JAHARRAH DAVIS